18 P.(2d) 1027

## FARMERS' COTTON FINANCE CORPORATION v. COTTON FINANCE & TRADING CORPORATION.

### No. 3744.

Supreme Court of New Mexico.

Jan. 30, 1933.

Rehearing Denied Feb. 25, 1933.

W. C. Whatley, of Las Cruces, for appellant.

Holt & Holt, of Las Cruces, for appellee.

SADLER, J.

The parties to this appeal appear to have been engaged during the year 1930 in financing cotton farming through crop mortgages in Dona Ana county, N. M. One Baeza leased a certain thirty-acre tract for that year from a landlord by the name of Murphy under a tenancy which reserved to the landlord one-fourth of the crops which should be produced on the leased premises. Baeza sublet verbally to Paz Garcia, stipulating that the latter should return the one-fourth rental to Baeza's landlord and reimburse Baeza's promised advancements to Garcia in the production of said crops.

After subletting to Garcia, Baeza executed in favor of appellant a chattel mortgage on the crops to be grown on this and other lands to secure an indebtedness of $5,625, which mortgage was duly filed with the county clerk of Dona Ana county on April 5, 1930. Baeza's advancements to or for the account of Garcia in raising and harvesting said crop amounted to $261.16.

Subsequent to the execution and filing of Baeza's mortgage to appellant, Garcia executed in favor of appellee a chattel mortgage on his three-fourths interest in the crops to

be grown on said land to secure an indebtedness of $347.43, which mortgage was likewise filed with the county clerk of said county on April 28, 1930.

Three bales of cotton were produced on the leased premises under this arrangement. They were harvested and ginned by Baeza, and by him delivered to appellant for application on his mortgage indebtedness after deduction of landlord's rental. Appellant realized $150 for the cotton, paid $37.50 thereof to the landlord in satisfaction of the rent reserved, and credited Baeza with $112.50, the reasonable value of the cotton, as found by the court, after deduction of rental.

The appellee then sued appellant for conversion of a three-fourths interest in the cotton delivered to appellant by Baeza. The theory of appellee's complaint was, of course, that by accepting from Baeza and disposing of cotton upon which appellee had a lien under its filed chattel mortgage, the appellant was guilty of a conversion. The charge of conversion was met by a denial on appellant's part. In addition, it pleaded specially as a defense that it also held a chattel mortgage and lien thereunder on all crops grown in 1930 on the lands in question, of which lien appellee had full notice and knowledge and which was claimed to be prior and superior to the lien of appellee's chattel mortgage.

After trial before the court without a jury, judgment was awarded appellee against appellant in the sum of $112.50, for the review of which this appeal is prosecuted.

The parties at the trial seem to have agreed, and the court concluded, that the subletting by Baeza to Garcia created the relationship of landlord and tenant between them. The court also concluded that at the time Baeza executed his chattel mortgage to appellant, he already had parted with his expectant title to the crops by virtue of his sublease to Garcia, and that consequently the mortgage by him to appellant operated to create no lien upon the crop in question. Upon the other hand, it was held by the court that the chattel mortgage from Garcia to appellee did create a lien in the latter's favor. The views reflected in these findings and conclusions of the trial court undoubtedly explain, and in the mind of the trial judge must have warranted, the judgment rendered against appellant. But in taking this view we think the trial court overlooked the determinative issue raised at the trial, both by the pleadings and in the proof, the findings upon which called for a judgment contrary to the one actually rendered.

The appellee charged appellant with conversion. The appellant tendered the general issue to such charge and as an affirmative defense pleaded specially the existence of its chattel mortgage, claiming priority therefor, but without attaching a copy or predicating any relief thereon. Under its general denial, the appellant was privileged to interpose all defenses in bar except matters of confession and avoidance. 38 Cyc. 2075. See, also, Southern Car Mfg. & Supply Co. v. Wagner, 14 N. M. 195, 89 P. 259. It did rely upon Baeza's landlord's lien, denominated a "preference lien" in the statute (section 82-101, Comp. 1929), for moneys and supplies

furnished the tenant to enable him to plant and harvest the crop in question. The appellant at the trial insisted before the court that on certain findings actually made it was entitled to judgment, and excepted to the court's conclusion that it was not. It also has briefed and argued in this court its position on this point, thus invoking our ruling thereon.

We are inclined to agree with appellant's contention and to hold appellant not guilty of conversion under the facts found by the lower court. In reaching this conclusion we may lay to one side any consideration of the relative priorities of the parties under the two chattel mortgages hereinabove mentioned. For if Baeza, the person who actually received the cotton from Garcia's possession, did not commit an act of conversion in so doing, it is difficult to predicate conversion upon appellant's receipt of it from Baeza. In other words, Baeza's justification furnishes a complete defense to appellant.

Assuming the relationship of landlord and tenant between Baeza and Garcia, which the parties concede and the court found to exist, Baeza had a preference lien under the statute cited hereinabove to secure him in advancements found by the court to have been made in the sum of $261.16. Admittedly, this lien had priority over Garcia's mortgage to appellee. Garcia could mortgage only his interest in the crop. The trial court correctly held that Garcia's ownership of the crop was subject to the one-fourth rental reserved, and "to the lien of said H. R. Baeza as landlord for funds advanced by Baeza to Garcia to defray the expense of making such crops."

The trial court found that the three bales of cotton were harvested and ginned by Baeza "with the full knowledge of said Paz B. Garcia, who made no objection thereto"; and that in taking such crops "Baeza claimed the right to the same not under his landlord's lien to secure him in the funds which he had theretofore advanced to Garcia, but under the claim of absolute ownership."

It is impossible fairly or reasonably to relate Baeza's claim of ownership to anything other than his statutory preference lien on the cotton to secure him for advancements made. We have then a case of advancements by the landlord in the sum of $261.16, to secure which the tenant produces a crop in which his determined interest has a value of only $112.50. The landlord in such circumstances with the tenant's full knowledge and acquiescence harvests and markets the crop applying the proceeds on the claim for advancements, leaving more than half of the claim therefor still unpaid. Any interpretation of this state of facts would be unreasonable which failed to stamp it as an abandonment of the crop to the landlord by the tenant, or at least as an agreement on the tenant's part that the landlord should harvest, market, and apply the proceeds to the claim of landlord's lien. The latter's act in standing by and seeing his landlord harvest and prepare the crop for market, without uttering a single word of protest, does violence to any other conclusion.

We are unfamiliar with any doctrine which denies to a landlord the right thus to proceed in a peaceable manner to secure the fruits of his lien, and appellee has cited us to none. Under the facts here disclosed appellee could have shown no injury nor any element of conversion until it established that proper handling by appellant would have produced an excess of value over and above the amount of the landlord's lien of Baeza. This it neither did nor attempted.

The facts acquit Baeza of conversion, and his acquittal is a discharge of appellant. It follows that the judgment of the lower court must be reversed and the cause remanded, with directions to such court to enter judgment for the appellant. The appellant will recover its costs both in the lower court and on appeal.

It is so ordered.

WATSON, C. J., and HUDSPETH and BICKLEY, JJ., concur.

ZINN, J., did not participate.