130 P.2d 1029

## GOGGINS v. DEXTER GIN CO.

### No. 4716.

Supreme Court of New Mexico.

Nov. 12, 1942.

G. L. Reese, Sr., of Roswell, for appellant.

Frazier & Quantius, of Roswell, for appellee.

SADLER, Justice.

The appellee was plaintiff below and the appellant was defendant. We shall refer to them under the designations there employed.

The appeal is from a judgment of the district court of Chaves County in plaintiff's favor for recovery from defendant of the sum of one hundred twenty dollars. The case was tried de novo in the district court on appeal by defendant from a judgment theretofore rendered against it in a slightly larger amount by a justice of the peace in Chaves County. The action was one for conversion by defendant of two bales of cotton grown on plaintiff's land upon which the plaintiff claimed there existed in his favor a paramount landlord's lien at the time of its conversion by defendant.

The plaintiff claimed under a rental contract entered into between him, as landlord, and one T. B. Gentry, as tenant, under date of March 6, 1937, whereby the former rented to the latter forty acres of land in Chaves County for the cropping season of

1937 at an agreed rental of two hundred fifty dollars, one-half of which was paid in cash and the remainder "to be paid out of the crop at harvesting time".

The rental contract, informally drawn, was in writing and was prepared in the office of defendant on its stationery and by its president. The tenant's cash payment on the rent reserved was advanced to him by defendant for that purpose. It, the defendant, was fully informed at all material times about the lease agreement and of the balance to be paid thereon when the crops were gathered.

On February 15, 1937, the tenant gave defendant a mortgage on the crops to be raised by him on this and other lands during the 1937 cropping season, to secure an indebtedness on which several hundred dollars were still owing at the time of the trial. This mortgage was duly filed· in the office of the County Clerk of Chaves County on March 8, 1937.

Additional facts found by the court pertinent to the arguments presented, as well as the conclusions drawn therefrom, are as follows:

"5. That Gentry had· contracted the sale of his cotton to one Bondurant at a price considerably in excess of that prevailing during the ginning season, but such cotton was required to be of certain grades and standard.

"6. That as Gentry picked his cotton it was turned over to the defendant and by it placed in its gin yard, and in less than thirty days from the time it had been picked and removed from the leased premises owned by plaintiff, two bales were delivered by the Gin Company to Bondurant, the purchase money collected by the Gin Company and applied to the indebtedness owing to Gentry; that the cotton so delivered netted the Gin Company $120.00, after deducting money advanced for picking and paying the ginning charges.

"7. That the plaintiff knew that said cotton was being taken to the gin as picked, ginned, and placed on the gin yard, and tacitly assented thereto, but he did not consent to a sale to Bondurant and appropriation of the procceds by the defendant, and plaintiff did not take any steps to foreclose his lien or sue out a distress warrant during the thirty day period after the cotton had left his farm, and in fact took no action whatever until the institution of this suit in the Justice of the Peace Court on July 12, 1941, for conversion of crops on which he had a landlord's lien.

"8. That the defendant Gin Company received other cotton grown on the leased premises owned by Goggins, but it did not dispose of it or appropriate the proceeds thereof for more than thirty days after it had left the farm.

"9. That cotton grown on lands farmed by Gentry other than those belonging to plaintiff was taken to the Gin Company by Gentry, and there is no evidence showing that the defendant herein knew on which particular lands any of said cotton had been raised, but it did know that Gentry had raised and was picking cotton from both tracts.

"10. That there were no identification marks on the cotton as brought to the gin, showing from which farm it had been raised, but the defendant took the cotton from both farms, delivered it to Bondurant, and applied the proceeds, less picking and ginning charges to defendant's indebtedness. The cotton raised on the other farm was disposed of in the case of Snipes v. Dexter Gin Company.

"Based upon the foregoing Findings of Fact, I make the following conclusions of law:

"Conclusions of Law

"1. That the landlord's lien was superior and paramount to that of the defendant Gin Company under its chattel mortgage at the time the Gin Company took possession of said two bales of cotton, disposed of same, and applied the proceeds to the indebtedness owing it by Gentry.

"2. That the plaintiff is entitled to judgment against the defendant for the sum of $120.00, with interest, and the costs of this action."

The court accordingly rendered judgment for the plaintiff for the amount found due with lawful interest and the matter is now before us for review. While nine separate assignments of error are presented and relied upon for reversal, most of them will be resolved by determining the correctness of the trial court's conclusion that the plaintiff did not lose his landlord's lien on the cotton in question by acquiescing in its removal by tenant to defendant's plant for ginning, nor by a failure to seek foreclosure thereof prior to the claimed conversion and within thirty days following such removal. The defendant correctly states in its brief that the trial court undoubtedly rendered judgment against defendant on the theory that it "converted the property * * * within the thirty day period after the cotton had been removed from the rented premises, and while the landlord's lien was still in effect."

The landlord's lien claimed by plaintiff is that provided by 1941 N.M.S.A. § 48-1501 (1929 Comp. § 82-101). So far as material, it reads: "All persons leasing or renting agricultural lands, at will or for a term, shall have a preference lien upon the property of the tenant hereinafter indicated, upon such premises, for any rent that may become due * * * * * and this lien shall apply only to animals, tools and other property furnished by the landlord to the tenant, and to the crop raised on such rented premises."

Sections 48-1502 and 48-1503, N.M.S.A. 1941 (1929 Comp. § 82-102 and 82-103), provide:

"It shall not be lawful for the tenant, while the rent and such advances remain unpaid, to remove, or permit to be removed, from the premises so leased or rented any agricultural products produced thereon, or any of the animals, tools or property furnished as aforesaid, without the consent of the landlord." (§ 82-102.)

"Such preference lien shall continue as to such agricultural products and as to the

animals, tools and other property furnished to the tenant as aforesaid, so long as they remain on such rented or leased premises and for one month thereafter; and such lien, as to agricultural products and as to animals and tools furnished as aforesaid, shall be superior to all exemptions." (§ 82-103.)

1941 N.M.S.A. § 48-1505 (1929 Comp. § 82-105) sets forth the procedure for foreclosing the landlord's lien through issuance of a distress warrant by a justice of the peace, upon application of the landlord, when the rent or advances shall become due, or the tenant shall be about to remove from the leased premises, or shall be about to remove his property therefrom.

 The defendant makes no claim to priority of his chattel mortgage over the plaintiff's "preference lien" under the above-mentioned statute. Indeed, it is not shown that the plaintiff had any knowledge of the existence of defendant's chattel mortgage at the time he leased to the tenant on March 6, 1937, if that fact could make any difference; whereas, the defendant did have knowledge of the lease agreement, its president having drawn the same. The defendant's contention throughout is simply that the plaintiff waived his lien on the crop by acquiescing in its removal to the gin for processing; or at all events, by failing to begin foreclosure proceedings within thirty days subsequent to its removal and prior to its disposition by defendant to another. We must rule against the defendant as to both contentions. The landlord's lien is spoken of as a "preference lien"

and its validity heretofore has been sustained by us. Farmers' Cotton Finance Corp. v. Cotton Finance & Trading Corp., 37 N.M. 101, 18 P.2d 1027. 1941 N.M.S.A. § 48-1503 (1929 Comp. § 82-103) expressly provides that the lien therein created shall continue so long as the property to which it attaches remains on the leased premises and for one month thereafter. Whatever may be the effect of this provision as against an innocent person dealing with the property subsequent to its removal by way of purchase or incumbrance, we have no hesitancy in holding the lien good for the thirty day period as against one having full knowledge of its existence. The trial court, upon substantial evidence, found the defendant possessed of such knowledge at the time it exercised dominion over the cotton by delivering it to a third party, accepting the proceeds and appropriating the same as a credit on an indebtedness owing to it by the tenant. Its liability to respond thus became fixed. Mitchell v. Monarch Elevator Co., 15 N.D. 495, 107 N.W. 1085, 11 Ann.Cas. 1001; Crider v. McIntyre, Tex.Civ.App., 20 S.W.2d 242. See, also, annotation, 96 A.L.R. 249, 265.

 The defendant challenges plaintiff's right to sue it for damages in conversion. The challenge is without merit. We did not question the propriety of conversion as a remedy under somewhat similar circumstances in Farmers' Cotton Finance Corp. v. Cotton Finance & Trading Corp., supra. See, also, Snipes v. Dexter Gin Co., 45 N.M. 475, 116 P.2d 1019, and Crider v. McIntyre, supra.

■■ Our holding that under the conditions shown the plaintiff did not waive his landlord's lien, either by permitting removal of the cotton to defendant's gin for processing or by failure to commence foreclosure within thirty days following such removal, renders unnecessary a separate discussion of several assignments of error presented by defendants. Any others not already ruled upon are resolved by our conclusion that the findings are supported by substantial evidence. They support the judgment rendered. It should be affirmed.

It is so ordered.

BRICE, C. J., and MABRY and BICKLEY, JJ., concur.

ZINN, J., being absent, did not participate.